## MATILDA BOSSE et al., Respondents, v. OTTO B. WEIK, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. **BONDS: Assignment of Bonds Payable to Order: Proof of Ownership by Third Party in Possession: Sufficiency of Evidence.** Where bonds are payable to the order of a person named therein the possession of the bonds by a third party is not prima-facie evidence of ownership, but such party is required to prove the assignment and his title. Evidence in this case held sufficient to establish a prima-facie case of ownership of part of the bonds.

2. ———: ———: ———: ———. Where it is impossible to obtain better evidence to establish plaintiff's ownership of bonds, it was held proper, to show the possession of plaintiff, that he

purchased the bonds of a broker, that the former owner who had since died had delivered them to a broker to be sold, that during her lifetime she did not, and since her death her legal representative has not challenged plaintiff's ownership. *Held further*, that this showing, under the circumstances, was sufficient to establish prima facie plaintiff's ownership of the bonds.

3. EVIDENCE: Best Evidence Rule. The rule of law which demands the best evidence is qualified to mean the best evidence available to the party producing it.

4. APPELLATE PRACTICE: Equity: Questions of Fact. In a proceeding in equity, although the appellate practice will defer largely to the trial court's findings on matters of fact, they are not bound thereby the same as in actions at law.

Appeal from the St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED (*with directions*).

*Claud D. Hall* for appellant.

(1) Possession of a negotiable instrument, endorsed in blank, is prima-facie proof of ownership. Boelka v. Muella, 28 Mo. 180; Dorn v. Parsons, 56 Mo. 601; Johnson v. McMurray, 72 Mo. 282; Daniel on Neg. Insts., sec. 812; Hamilton v. Marks, 63 Mo. 167; Spears v. Bond, 79 Mo. 462; Long v. Danforth, 95 Mo. App. 441; Million v. Ohnsorg, 10 Mo. App. 432; Ashbrook v. Letcher, 41 Mo. App. 369; Long v. Long, 141 Mo. 352; Rowe v. Annan, 80 Mo. App. 200; Neuhoff v. O'Reilly, 94 Mo. 169; Tiedeman on Bills and Notes, sec. 113; Gillespie v. Bank, 95 Pac. 220; Patterson v. Cove, 61 Mo. 677; Balmer v. Sunder, 11 Mo. App. 454. (2) Bonds payable to order, and insurance policies, may be assigned by mere delivery, and possession of same is prima-facie evidence of ownership. Wood v. Ins. Co., 22 La. An. 617; Pierce v. Makepeace, 65 Ind. 347; May on Ins., sec. 395; Chapman v. McIlrath, 77 Mo. 38; Joyce on Ins., sec. 2333.

*Walter H. Saunders* for respondent.

GRAY, J.—This appeal grows out of a receivership proceeding wherein the affairs of the National Bond Company, a corporation which issued and sold bonds to investors on installment plan, were placed in the hands of a receiver. The circuit court appointed Honorable Lee Hagerman, Master, to take proof of the claims of creditors. The appellant filed his affidavit of proof of a claim he had against the company with the master, showing he owned four bonds as assignee of Emma Goggin, and one bond as assignee of A. D. Williamson. With this proof he filed the original bonds forming the basis of his claim, the bond company's receipt books in the name of Emma Goggin, showing the amount paid by her, and a like book showing the amount paid by the said Williamson on his bond. Two of the Emma Goggin bonds were issued to Therman Uppenkamp, and by him endorsed to Emma Goggin, and the other two were issued direct to her. The Williamson bond was issued to him, and there appeared on it an assignment by him to one Emma Fisher.

The master refused to allow the demands on the affidavit of the appellant, and testimony was heard. There was no direct testimony that the signature of Emma Goggin was written by her on the bonds, and the master refused to allow appellant's claim on these bonds, for the reason that the proof of ownership in appellant was insufficient.

The evidence discloses the following facts: That the claimant bought the Emma Goggin bonds from James E. Dame, an attorney at law in the city of St. Louis. One H. W. Goessling testified that he lived in the city of St. Louis, and that one DeWitt, who was a dealer in bonds, offered to sell the bonds in controversy, and represented himself as the agent of Mrs. Goggin; that at said time the signature of Mrs. Goggin was on the bonds; that he went with DeWitt to see Mr. Dame,

resulting in the bonds being sold to the claimant. Mr. Dame, as a witness, corroborated this testimony, that DeWitt claimed that he was acting for a woman who was the owner of the bonds, and who was sick at the time.

Dr. Miesenbach testified that he knew Emma Goggin; that he had an office at the corner of Jefferson and Olive streets, and he treated her for about a month, and that he had a conversation with her several times about the sale of the bonds mentioned in evidence and that she told him she had placed the bonds in the hands of an agent to be sold for her. At that time Mrs. Goggin was sick and unable to look after her affairs, and was in straightened circumstances and she stated she had authorized her .agent to sell the bonds for her; that Mrs. Goggin died at the hospital some time after the time appellant purchased the bonds.

The appellant also offered testimony proving that no one had asserted any claim to the Goggin bonds, and that his title had never been in dispute. The endorsement of the Goggin bonds was in the following form: "For value received, I hereby sell, transfer and convey all my right and interest in this savings bond, without recourse or liability on me."

The testimony concerning the appellant's ownership of the Williamson bond tends to prove that Williamson endorsed the bond to Emma Fisher, but there is absolutely no evidence that Emma Fisher ever assigned the bond or that her signature thereon was made with her knowledge and authority.

After the master had filed his report refusing to allow the demand of appellant, exceptions were duly filed, and afterwards overruled by the court, and from which appellant appealed.

The appellant claims that the possession of the bonds endorsed as they were, made a prima-facie case, and cites Edelen v. Worth, 69 Mo. App. 124; Boelka v. Muella, 28 Mo. 180, and Priest v. Way, 87 Mo. 31.

We do not believe those cases are in point. In the first one, the only question decided is, that a note may be transferred by delivery without endorsement or written assignment so as to enable the assignee to maintain an action thereof in his own name. The question of the authority to make the transfer was not an issue.

In the second case, the evidence did not show when the endorsement was made on the note, and the court held the presumption was that it was made by authority of the parties contemporaneously with the execution of the instrument, and hence became a part of the note. Under the terms of the bond contracts in controversy, there is no presumption that the assignees' endorsements are a part of the original contract.

In the last case, Priest v. Way, the court held that the possession of a check payable to a person or bearer, was prima-facie evidence of ownership. The bonds in controversy are payable to the order of a person therein named, and in such cases the possession of the bonds by a third party is not prima-facie evidence of ownership, but such party is required to prove the assignment and his title. [Worrell v. Roberts, 58 Mo. App. 198; Dorn v. Parsons, 56 Mo. 601; Hair v. Edwards, 104 Mo. App. 213, 77 S. W. 1089.]

We hold that the master had the right to require the proof of the assignments of Emma Goggin and Emma Fisher on the bonds. There was no evidence to prove the assignment of Emma Fisher on the Williamson bond, and therefore, the master did not err in refusing to allow the same as a demand.

On the Goggin bonds, it seems to us that the claimant made out a prima-facie case. He proved that Mrs. Goggin stated that she had delivered the bonds to an agent to sell for her, and that such bonds endorsed as they were, were transferred and circulated in the community merely by such endorsement and delivery, and that it was not customary to have the bonds transferred on the books of the company. When the bonds were

delivered to the broker to sell, it cannot be said that he did not have the authority to sell the same.

It was also shown that a bond broker did sell the bonds to the claimant, and that this was during the life of Mrs. Goggin, and that claimant had ever since held the same, and notwithstanding the affairs of the company were being wound up in the courts of St. Louis, where all these transactions took place, no person during the lifetime of Mrs. Goggin, or since, had challenged claimant's title.

The best evidence that she assigned the bonds would be proof of her signature, but the claimant showed by his testimony that she was dead, and it was impossible to identify her signature or to find the broker from whom he had purchased the bonds.

The rule of law which demands the best evidence is qualified to mean the best evidence available to the party producing it. [Montgomery v. Dormer, 181 Mo. 5, 79 S. W. 913.] Of course this means that the best evidence must be proper evidence. It was proper to prove the possession of claimant and that he purchased the bonds of a broker, and it was also proper to prove that Mrs. Goggin was dead, and that during her lifetime she did not challenge claimant's ownership, and that her legal representatives had not since her death; and it was also proper to prove that she had delivered the bonds to a broker to be sold for her.

In view of the fact that it was impossible to procure better evidence, it seems to us that the master should have accepted this testimony as making a prima-facie case of plaintiff's ownership to the bonds.

If the action was one at law, then we might not interfere with the finding of the master as approved by the trial court, but the proceeding is in equity, and while we will defer to the trial court's findings on matters of fact, we are not bound thereby the same as in actions at law.

The premises considered, we will sustain the court in rejecting that portion of the claimant's claim based on the Williamson bond, and reverse the cause with directions to the court to allow the claimant's demand based on the bonds of Emma Goggin.  All concur.